Mark H. Anania
Kristen M. Harvilla
**STEVENS & LEE**
510 Carnegie Center Drive, Suite 400
Princeton, NJ 08540
Tel: 609-243-9111
mark.anania@stevenslee.com
kristen.harvilla@stevenslee.com

Christopher Joyce, Esq. (*pro hac vice*)
Caryn Peterson, Esq. (*pro hac vice*)
George Kennett, Esq. (*pro hac vice*)
**Flannery | Georgalis, LLC**
1621 Euclid Avenue, Floor 20
Cleveland, Ohio 44115
Tel: (216) 367-2120
cjoyce@flannerygeorgalis.com
cpeterson@flannerygeorgalis.com
gkennett@flannerygeorgalis.com

*Attorneys for Defendant GV Art and Design LLC*

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| TEAM BEANS, L.L.C.,<br>D/B/A FOREVER COLLECTIBLES,<br><br>Plaintiff,<br><br>v.<br><br>GV ART AND DESIGN LLC,<br><br>Defendant. | C.A. No. 2:25-cv-17274 |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION TO DISMSS OR TRANSFER PLAINTIFF'S COMPLAINT**

# TABLE OF CONTENTS

Page

I. INTRODUCTION ........ 1

II. STATEMENT OF FACTS ........ 1

III. ARGUMENT ........ 4

A. The first-filed rule justifies dismissal of FOCO's declaratory judgment action. ........ 4

B. This Court should exercise its discretion to refuse to exercise declaratory judgment jurisdiction. ........ 10

C. In the alternative, the New Jersey Complaint should be transferred to the Northern District of Ohio. ........ 12

IV. CONCLUSION ........ 27

# TABLE OF AUTHORITIES

**Page(s)**

## Federal Cases

*Allied Old English, Inc. v. Uwajimaya, Inc.*,
2012 WL 3564172 (D.N.J. Aug. 16, 2012) ....................19

*AmSouth Bank v. Dale*,
386 F.3d 763 (6th Cir. 2004) ....................11

*Automotive Service Assoc. of New Jersey, Inc. v. Rockland Exposition, Inc.*, 2008 WL 5244282 (D.N.J. Dec. 12, 2008) ....................*passim*

*Certified Restoration Dry Cleaning Network, L.L.C. v. Tenke Corp.*,
511 F.3d 535 (6th Cir. 2007) ....................11

*Church & Dwight v. Mayer Labs, Inc.*,
2010 WL 3907038 (D.N.J. Sept. 28, 2010) ....................*passim*

*E.E.O.C. v. University of Pennsylvania*,
850 F.2d 969 (3d Cir. 1988) ....................5,6

*Excalibur Reinsurance Corp. v. Select Ins. Co.*,
2015 WL 12806513 (E.D. Pa. July 7, 2015) ....................*passim*

*Goodyear Dunlop Tires Operations, S.A. v. Brown*,
564 U.S. 915 (2011) ....................15

*Honeywell Int'l Inc. v. Int'l. Union, United Auto., Aerospace & Agr. Implement Workers of Am.*,
502 Fed. Appx. 201 (3d Cir. 2012) ....................5,11

*In re: Howmedica Osteonics Corp.*,
867 F.3d 390 (3d Cir. 2017) ....................25

*Jumara v. State Farm Ins. Co.*,
55 F.3d 873 (3d Cir. 1995) ....................*passim*

*Pittsburgh Logistics Systems, Inc. v. C.R. England, Inc.*,
669 F. Supp. 2d 613 (W.D. Pa. 2009) ....................8

*Reifer v. Westport Ins. Corp.*,
751 F.3d 129 (3d Cir. 2014) ....................................................................12

*Snack Joint LLC v. OCM Group USA, NJ, Inc.*,
2021 WL 4077583 (D.N.J. Sept. 8, 2021) .....................................................26

*Strategic Benefit Solutions Corp. v. Benefitelect, Inc.*,
2020 WL 4364329 (D.N.J. July 29, 2020) ................................................14,17

*Telebrands Corp. v. MartFIVE, LLC*,
2013 WL 4675558 (D.N.J. Aug. 30, 2013) ............................................*passim*

*TGL Golf Holdings, LLC v. LA Golf Partners, LLC*,
2025 WL 1638353 (D. Del. June 9, 2025) ................................................10,12

*Unlimited Technology, Inc. v. Leighton*,
266 F. Supp. 3d 787 (E.D. Pa. 2017)...........................................................8,9

*Wilton v. Seven Falls Co.*,
515 U.S. 277 (1995)......................................................................................10

*Yang v. Odom*,
409 F. Supp. 2d 599 (D.N.J. 2006)...............................................................14

**Federal Statutes**

15 U.S.C. § 1051.............................................................................................15

28 U.S.C. § 1331 .............................................................................................15

28 U.S.C. § 1391 .............................................................................................15

28 U.S.C. § 1404(a) ...................................................................................*passim*

28 U.S.C. § 2201(a) ....................................................................................10, 15

**State Statutes**

Ohio Deceptive Trade Practices Act..............................................................2, 24

**Rules**

Fed. R. Civ. P. 12(b)(6)........................................................................................4

Defendant GV Art and Design, LLC ("GV Art") submits this memorandum of law in support of its motion to dismiss or transfer the declaratory judgment case filed by Plaintiff Team Beans, L.L.C., d/b/a Forever Collectibles ("FOCO").

## I. INTRODUCTION

This Court should dispose of FOCO's declaratory judgment case because it is substantively duplicative of GV Art's own coercive suit currently pending in its home forum—the Northern District of Ohio. Notwithstanding its posture in this case, GV Art is the true plaintiff in this dispute; it is the rights holder that is seeking to stop FOCO's infringement. This case is only here because FOCO filed this action in the middle of the parties' settlement discussions to beat GV Art to the courthouse and deprive the true plaintiff of its choice of forum. Whether pursuant to an exception to the first-filed rule, an exercise of this Court's discretion under the Declaratory Judgment Act, or a transfer analysis under § 1404(a), the Court should not give deference to FOCO's anticipatory filing and terminate this action in favor of GV Art's Northern District of Ohio action.

## II. STATEMENT OF FACTS

Defendant GV Art is a family-owned boutique run by brothers George Vlosich III and Greg Vlosich that specializes in creating original artwork, designs, and apparel showcasing different sports merchandise. [George Vlosich Decl. at ¶¶ 1-8]. Together, the family relies on their combined creativity and backgrounds in

art and design to create items for sports fans to use and wear, including t-shirts. [*Id*. at ¶ 8]. George's designs alone have garnered widespread attention and have been featured on multiple nationwide broadcasts, including ESPN, the Jimmy Kimmel Show, and the Oprah Winfrey Show. [*Id*. at ¶ 5]. Indeed, GV Art's designs were so successful that in 2020, FOCO explored acquiring GV Art, but the parties were unable to reach an agreement, and FOCO remained a direct competitor. [*Id*. at ¶ 11].

In the years that followed, GV Art monitored FOCO's activities and recently discovered how FOCO's admiration became imitation. In reaction to these discoveries, in September 2025, GV Art sent a cease-and-desist letter to FOCO accusing certain of its t-shirt designs of infringing GV Art's original designs including FOCO's Nation T-Shirt, Circle Vintage, Triangle Vintage, and Retro Logo Mascot collections. [Christopher Joyce Decl. at ¶ 4]. As is typical of such letters, GV Art warned that if FOCO failed to stop infringing GV Art's designs, GV Art would pursue litigation against FOCO for violations of the Lanham Act, including trade dress infringement and unfair competition, and violations of the Ohio Deceptive Trade Practices Act ("ODTPA"). [*Id*.].

Over the next few months, the parties then engaged in what GV Art had considered genuine efforts to attempt to resolve their dispute during which GV Art refrained from initiating its lawsuit. These efforts began with an introductory call proposed by FOCO's counsel to "help in de-escalating the matter," which the parties

conducted on October 1, 2025. [Joyce Decl. at ¶ 5]. Although the initial call did not resolve this dispute, GV Art's counsel followed up on October 17, 2025, to see if FOCO wished to continue their discussions or whether GV Art should proceed with its complaint. [*Id*. at ¶ 6]. Encouragingly, FOCO's counsel responded that FOCO was open to additional discussions, including potentially discontinuing or modifying certain of its designs in response to the concerns GV Art had raised. [*Id*.]. GV Art's counsel then responded to this proposal with its own counterproposal on October 29, 2025, and specifically asked that FOCO respond to this latest offer by November 5, 2025. [*Id*. at ¶ 6].

That same day, counsel for FOCO requested additional time to respond in light of a death in the family of one of its counsel – specifically, "a week or so." [*Id*.]. Of course, GV Art agreed to the request and expressed its condolences. [*Id*.]. But then on November 6, 2025, within the period of time that GV Art had extended, GV Art did not receive a settlement response, but instead FOCO's declaratory judgment complaint. FOCO's filing of the declaratory judgment complaint clearly demonstrated a breakdown in the efforts to resolve the dispute outside of litigation. Thus, to assert its own choice of forum, GV Art filed a coercive suit in the Northern District of Ohio on November 19, 2025, for claims substantively identical to those

that FOCO sought as declaratory judgment in this District ("Ohio Action").[1] On December 22, 2025, FOCO moved to dismiss GV Art's Complaint, citing the first-to-file rule and Fed. R. Civ. P. 12(b)(6). In response, GV Art sought leave to amend its complaint, which, if granted, will moot the pending motion to dismiss. GV Art's Proposed First Amended Complaint asserts an additional trade dress infringement claim against FOCO, raises new copyright infringement claims against FOCO, and clarifies its original claims for trade dress infringement.[2]

Because FOCO's declaratory judgment complaint is an anticipatory filing submitted while GV Art was refraining from taking action, GV Art now moves to dismiss or transfer under an exception to the first-filed rule, an exercise of the Court's declaratory judgment discretion, or pursuant to § 1404(a).

## III. ARGUMENT

### A. The first-filed rule justifies dismissal of FOCO's declaratory judgment action.

The timing of FOCO's declaratory judgment complaint alone warrants disposition. In requesting additional time to respond to GV Art's demands, FOCO indicated that the parties would continue to negotiate in the hopes of avoiding litigation, which GV Art relied upon in not filing its own threatened action, only to

---

[1] The Ohio Action is captioned *GV Art and Design, LLC v. Team Beans, L.L.C.*, 1:25-cv-02525.

[2] A copy of GV Art's Proposed First Amended Complaint filed in the Ohio Action is attached as Exhibit A to Declaration of Mark H. Anania.

be greeted by FOCO's anticipatory filing. These are not the type of suits against which the first-filed rule is meant to protect. On the contrary, exceptions to the first-filed rule recognized in the Third Circuit instruct that circumstances like this justify dismissing FOCO's declaratory judgment action or otherwise staying or transferring in favor of GV Art's coercive action.

To protect principles of equity and comity, the first-filed rule traditionally "counsels deference to the suit that was filed first, when two lawsuits involving the same issues and parties are pending in separate federal district courts." *Honeywell Int'l Inc. v. Int'l. Union, United Auto., Aerospace & Agr. Implement Workers of Am*., 502 Fed. Appx. 201, 205 (3d Cir. 2012). But the Third Circuit has recognized that the first-filed rule is "not a mandate directing wooden application of the rule without regard to rare or extraordinary circumstances, inequitable conduct, bad faith, or forum shopping." *E.E.O.C. v. University of Pennsylvania*, 850 F.2d 969, 972 (3d Cir. 1988). Rather, "[t]he letter and spirit" of the first-filed rule "are grounded on equitable principles" and "[c]ourts have consistently recognized that the first-filed rule is not a rigid or inflexible rule to be mechanically applied." *Id*. at 976-77. The Third Circuit has further opined that evidence of bad faith and instances of forum shopping where "the first-filing party instituted suit in one forum in anticipation of the opposing party's imminent suit in another, less favorable forum" are both regarded as "proper bases for departing from the rule." *Id*. at 976. Here, FOCO's

anticipatory filing, made during the time extension of timerequested to continue discussions to resolve the claims raised in GV Art's cease-and-desist letter, meets several exceptions highlighted in *E.E.O.C.*.

**i. FOCO's action is anticipatory.**

This Court has repeatedly found a declaratory judgment action filed within the time frame provided for a response to a cease-and-desist letter is an anticipatory filing. *Automotive Service Assoc. of New Jersey, Inc. v. Rockland Exposition, Inc.*, 2008 WL 5244282, at *5 (D.N.J. Dec. 12, 2008) ("The Court finds that AASP/NJ's filing of the complaint in the New Jersey Action one day after informing defendants that it needed more time to respond to defendants' planned litigation constitutes an anticipatory filing."). This is especially true when a cease-and-desist letter provides a specific deadline for a response. *Telebrands Corp. v. MartFIVE, LLC*, 2013 WL 4675558, at *6 (D.N.J. Aug. 30, 2013); *see also Excalibur Reinsurance Corp. v. Select Ins. Co.*, 2015 WL 12806513, at *1 (E.D. Pa. July 7, 2015) (finding that a plaintiff's choice to file a complaint rather than respond to a demand letter within a number of days of receipt is "'indicative of an improper first filing.'") (further citations omitted). And this is even more true of declaratory judgment plaintiffs who acknowledge the deadline, the consequences of failing to respond on time, and request an extension. *Telebrands Corp.*, 2013 WL 12806513, at *1. Another indication is when a coercive action is filed just days or weeks after a

declaratory action is filed. *Id*. ("'Courts take a dim view of declaratory plaintiffs who file their suits mere days or weeks before the coercive suits filed by a 'natural plaintiff' and who seem to have done so for the purpose of acquiring a favorable forum.'") (further citations omitted).

All of these features are present here: (i) this dispute began with GV Art's cease-and-desist letter to FOCO; (ii) GV Art's letter provided a specific deadline and the threat of a lawsuit if FOCO did not comply; (iii) the parties thereafter engaged in settlement discussions during which GV Art expressly refrained from filing its own lawsuit and extended deadlines to allow those discussions to continue; (iv) during the extended period, without terminating such negotiations or warning to GV Art, FOCO filed its own declaratory judgment complaint; and (v) GV Art followed with its own coercive suit days later. [Joyce Decl. at ¶¶ 1-7]. Accordingly, FOCO's declaratory judgment complaint was an anticipatory filing.

**ii. FOCO induced GV Art to delay filing its coercive suit.**

FOCO's declaratory judgment complaint can also be considered to be in bad faith. District Courts within this circuit have repeatedly taken the view that where a party "has advised the other that it will file suit on a specific date, a pre-emptory filing of a declaratory judgment action is generally considered to have been taken in bad faith." *Pittsburgh Logistics Systems, Inc. v. C.R. England, Inc*., 669 F. Supp. 2d 613, 623-24 (W.D. Pa. 2009) (declining to apply first-filed rule where party's

filing was "anticipatory and done solely for the purpose of attempting to obtain a forum which it perceived as more favorable for itself."); *Unlimited Technology, Inc. v. Leighton*, 266 F. Supp. 3d 787, 794 (E.D. Pa. 2017) (finding bad faith when a party responds to a cease-and-desist letter and gives the impression litigation can be avoided, only to file its own complaint). In such instances, where a plaintiff "improperly 'fire[d] the first shot while defendants had holstered their litigation guns," a plaintiff "is not entitled to the benefits of the first-filed rule." *Excalibur Reinsurance Corp*., 2015 WL 12806513, at *1 (further citation omitted); *see also Unlimited Technology, Inc*., 266 F. Supp. 3d at 795 ("[b]ecause we conclude that Leighton's filing was anticipatory and in bad faith, we shall decline to apply the first-filed rule."). When faced with such bad faith, a court should decline to entertain the suit. *See Excalibur*, 2015 WL 12806513, at *1 (declining to exercise jurisdiction under Declaratory Judgment Act where action was "filed in bad faith, as it is improperly anticipatory and solely for declaratory relief").

Again, all these hallmarks are present here. FOCO's communications presented a genuine interest in at least pursuing a potential resolution, which induced GV Art to refrain from proceeding to litigation, only for FOCO to file its own declaratory judgment complaint with this Court. [Joyce Decl. at ¶ 8]. Indeed, it was not just one communication, but several, including a request for an extension of time

to permit discussions to continue, which was freely granted.[3] [*Id*. at ¶¶ 1-7]. After receiving GV Art's cease-and-desist letter and subsequent demand, FOCO repeatedly engaged with GV Art and even requested additional time to continue their discussions. These are the types of circumstances that the exception to the first-filed rule is meant to address so as not to prejudice a claimant, like GV Art, who engaged in good faith settlement discussions to its detriment. *Unlimited Technology, Inc*., 266 F. Supp. 3d at 795 ("[t]he cease-and-desist letter, Hawkins' outreach and apparent willingness to pursue settlement, and his lack of objection to the document request induced Unlimited to forgo filing suit in reliance upon ongoing settlement negotiations. Consequently, in the absence of any objection to the request and in light of Hawkin's last communication discussing a possible resolution, one would reasonably presume that discussions were continuing.").

As an anticipatory bad faith filing, this Court can dismiss FOCO's declaratory judgment complaint on this basis alone. *Excalibur Reinsurance Corp*., 2015 WL 12806513, at *1 (dismissing declaratory judgment claim based on exceptions to first-filed rule where claim was anticipatory and made in bad faith); *TGL Golf Holdings, LLC v. LA Golf Partners, LLC*, 2025 WL 1638353, at *5 (D. Del. June 9, 2025) (dismissing declaratory judgment action and declining to apply

[3] For the avoidance of doubt, given the circumstances, GV Art would have provided FOCO additional time to respond to its settlement demand if FOCO's counsel required additional time. [Joyce Decl. at ¶ 6].

first-filed rule where plaintiff "engaged in forum shopping and used the DJA for procedural fencing."). FOCO's conduct exemplifies an anticipatory, bad-faith filing designed to preempt a coercive suit.

### B. This Court should exercise its discretion to refuse to exercise declaratory judgment jurisdiction.

In addition to dismissing under an exception to the first-filed rule, this Court can also use its discretion to decline to exercise declaratory judgment jurisdiction over FOCO's action in favor of GV Art's mirror-image, coercive Ohio Action.

The Declaratory Judgment Act provides courts with substantial discretion to grant declaratory relief, noting that a court only "*may* declare the rights and other legal relations of any interested party." 28 U.S.C. § 2201(a) (emphasis added); *see also Wilton v. Seven Falls Co*., 515 U.S. 277, 282 (1995) ("[D]istrict courts possess discretion in determining whether and when to entertain an action under the Declaratory Judgment Act.").

However, when there exists a parallel coercive suit – even if that coercive suit is the second one filed – courts frequently exercise their discretion to decline to entertain the declaratory judgment case in favor of the coercive action. *Honeywell Int'l., Inc.*, 502 Fed. Appx. at 206 ("We conclude, therefore, that the District Court did not abuse its discretion in dismissing Honeywell's Declaratory Judgment suit in favor of the second-filed action for coercive relief in the Eastern District of Michigan.") (citing *Research Automation, Inc. v. Schrader-Bridgeport Int'l, Inc.*,

626 F.3d 973, 980 (7th Cir. 2010) (observing that "where the parallel cases involve a declaratory judgment action and a mirror-image action seeking coercive relief . . . we ordinarily give priority to the coercive action, regardless of which case was filed first."); *Certified Restoration Dry Cleaning Network, L.L.C. v. Tenke Corp.*, 511 F.3d 535, 551-52 (6th Cir. 2007) (noting that the "first-filed rule . . . much more often than not gives way in the context of a coercive action filed subsequent to a declaratory judgment [action]" and thus opining that cases "construing the interplay between declaratory judgment suits based on the merits of the underlying substantive claims create . . . a presumption that a first filed declaratory judgment action should be dismissed . . . in favor of the substantive suit") (citation and internal quotation marks omitted); *AmSouth Bank v. Dale*, 386 F.3d 763, 788 (6th Cir. 2004) (noting "[w]here a pending coercive action, filed by the natural plaintiff, would encompass all the issues in the declaratory judgment action, the policy reasons underlying the creation of the extraordinary remedy of declaratory judgment are not present, and the use of that remedy is unjustified.").

For the same reasons as these cases, this Court should decline to entertain FOCO's suit here.[4] FOCO's complaint contains no affirmative coercive claims of its

[4] The same outcome would occur should this Court, as some have done, consider the non-exhaustive factors employed in *Reifer v. Westport Ins. Corp.*, to the extent they are relevant, including (1) the likelihood a declaration will resolve the dispute, (2) the convenience of the parties, (3) the public interest in settlement of the uncertainty of obligation, (4) the availability and relative convenience of other

own but only asks for declaratory judgement relief on GV Art's claims. [D.E. 1 at ¶ 51]. In contrast, GV Art's Ohio Action asserts coercive claims for FOCO's infringement of its trade dress and unfair competition involving the same parties, the same facts, and the same disputes. *See GV Art and Design, LLC v. Team Beans, L.L.C.*, 1:25-cv-02525 (N.D. Ohio).[5] Because GV Art seeks coercive relief through the Ohio Action while FOCO seeks only declaratory relief in this action, this Court should decline to exercise jurisdiction to prioritize the Ohio Action.

### C. In the alternative, the New Jersey Complaint should be transferred to the Northern District of Ohio.

While GV Art contends that the Court should dismiss this action under an exception to the first-filed rule or by declining to exercise declaratory judgment

---

remedies, (5) avoidance of duplicative litigation, and (6) prevention of the use of the declaratory action as a "method of procedural fencing or a means to provide another forum in the race for res judicata." 751 F.3d 129, 146 (3d Cir. 2014). In instances like this, where FOCO has filed an anticipatory filing and filed this claim while inducing GV Art to believe negotiations were ongoing, such anticipatory actions are significant factors that tip in favor of declining jurisdiction and dismissing FOCO's matter. *TGL Golf Holdings, LLC*, 2025 WL 1638353, at *5–6. And when another coercive suit is pending in another forum that is capable of resolving this dispute, which is a proper forum that would not be wholly inconvenient in which to litigate this dispute, dismissing this case is appropriate.

[5] GV Art has since moved for leave to amend the complaint in the Ohio Action. If allowed, the First Amended Complaint adds new claims against FOCO for copyright infringement in addition to the trade dress infringement claims. Although the parallel cases present seek declaratory action and a mirror-image coercive action in Ohio, if the amended complaint is allowed in the Ohio Action, the two matters will no longer mirror one another. As this Court will not have the copyright infringement claims before it, policy and judicial efficiency favor allowing the parties to resolve their dispute in the coercive-suit's forum.

jurisdiction, the Court also has an independent basis to transfer this action under 28 U.S.C. § 1404(a).

Under § 1404(a), a court may transfer any civil action to any other district or division where the case might have been brought "[f]or the convenience of parties and witnesses, in the interest of justice." 28 U.S.C. § 1404(a). The party seeking transfer bears the burden to demonstrate that (1) the proposed transferee forum is a proper venue for the case such that it could have been brought initially in the forum; (2) the proposed transfer will be more convenient for the parties and witnesses; and (3) the proposed transfer will be in the interest of justice. *Jumara v. State Farm Ins. Co*., 55 F.3d 873, 879 (3d Cir. 1995). But the application of these factors is not rigid, and the Court will weigh "all relevant factors to determine whether on balance the litigation would more conveniently proceed and the interests of justice be better served by transfer to a different forum." *Automotive Service Ass'n.of New Jersey, Inc*., 2008 WL 5244282, at *3. Importantly, the Court may also take into account whether – such as here – the case sought to be transferred is an anticipatory declaratory judgment filing instead of a traditional coercive case. Indeed, when faced with similar instances of anticipatory claims filed during ongoing negotiations to avoid litigation, courts routinely transfer the matter to the forum of the second-filed coercive action on § 1404(a) grounds. *Strategic Benefit Solutions Corp. v. Benefitelect, Inc*., 2020 WL 4364329, at *5 (D.N.J. July 29, 2020) (transferring

anticipatory, bad faith action to defendant's chosen forum where second-filed coercive action was pending); *Church & Dwight v. Mayer Labs, Inc.*, 2010 WL 3907038, at *13 (D.N.J. Sept. 28, 2010) (same) *Automotive Service Ass'n of New Jersey, Inc*., 2008 WL 5244282, at *2 (transferring anticipatory action to defendant's chosen forum where second-filed coercive action was pending). As shown below, an examination of all these relevant considerations in the instant case weighs in favor of transfer.

**i. The case may have been filed in the Northern District of Ohio.**

A district is one in which an action "might have been brought" if that district has (1) subject matter jurisdiction over the claims; (2) personal jurisdiction over the parties; and (3) is a proper venue. *Yang v. Odom*, 409 F. Supp. 2d 599, 604 (D.N.J. 2006) (citing *Shutte v. Armco Steel Corp.,* 431 F.2d 22, 24 (3d Cir.1970). Putting aside the issue of where this action *should* have been brought, addressed *supra*, there is no dispute that FOCO *could* have brought this declaratory judgment action in the Northern District of Ohio.

Pursuant to 28 U.S.C. §§ 1331, the Northern District of Ohio can have subject matter jurisdiction over FOCO's claims because they arise under the Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq*., and the Lanham Act, 15 U.S.C. §§ 1051 *et seq*. [*See, e.g.* D.E. 1 at ¶¶ 45-52]. Likewise, GV Art is subject to personal jurisdiction in the Northern District of Ohio's jurisdiction. *See Goodyear Dunlop*

*Tires Operations, S.A. v. Brown*, 564 U.S. 915, 924 (2011) (place of incorporation and principal place of business are "'paradig[m] bases for the exercise of general jurisdiction."). GV Art is organized under the laws of Ohio and headquartered in the Northern District of Ohio, where GV Art designed the trade dress at issue. [Vlosich Decl. at ¶ 2]. Finally, venue is proper in the Northern District of Ohio as well. Pursuant to general venue statute, 28 U.S.C. § 1391, venue is proper in a civil action in "a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located." *Id.* § 1391(b)(1). Under this provision, an entity named as a defendant is a resident of "any judicial district in which such defendant is subject to the court's personal jurisdiction with respect to the civil action in question." *Id.* § 1391(c). GV Art is an Ohio limited liability company with its principal place of business in Lakewood, Ohio. [Vlosich Decl. at ¶ 2].[6] With subject matter jurisdiction, personal jurisdiction, and venue all existing in the Northern District of Ohio, this action may have proceeded there in lieu of this District.

[6] Lakewood, Ohio is located in Cuyahoga County which is within the Northern District of Ohio. *See* "Counties Served by Division," United States District Court for the Northern District of Ohio Clerk's Office, https://www.ohnd.uscourts.gov/counties-served-division (last accessed December 14, 2025).

### ii. The private factors weigh in favor of transfer.

Once established that a case may have been brought in the transferee forum, the Court proceeds to analyze whether the transferee forum will be more convenient. To assist in this analysis, the Third Circuit has used variants of non-exhaustive private and public factors. *Jumara*, 55 F.3d at 879-80. The private factors include (1) the plaintiff's forum preference; (2) the defendant's preference; (3) where the claim arose; (4) the convenience of the parties as indicated by their relative physical and financial condition; (5) the convenience of the witnesses to the extent they are unavailable in one of the fora; and (6) the location of books and records to the extent they cannot be produced in an alternative form. *Id*. The public factors include (1) the enforceability of the judgment; (2) the practical considerations that could make trial fast, expeditious or inexpensive; (3) court congestion; (4) the local interest in deciding local controversies at home; (5) the public policies of the fora; and (6) the familiarity of the trial judge with the applicable state law in diversity cases. *Id*.

#### 1. Private interest factor 1 (FOCO's forum preference) is afforded no weight.

Under the *Jumara* factors, private interest factor 1 addresses a "plaintiff's forum preference as manifested in the original choice." 55 F.3d at 879. Although a plaintiff's forum preference is generally given deference, when a plaintiff's action is anticipatory, the plaintiff's forum preference is given no deference. *See Church & Dwight*., 2010 WL 3907038 at *7-8 (granting motion to transfer because plaintiff's

action was anticipatory); *Strategic Benefit Solutions Corp*., 2020 WL 4364329, at *6 (noting where first-filed claim is anticipatory and "a related action is pending in another forum a plaintiff's choice is entitled to less deference"). Because FOCO's claim is anticipatory, its forum preferences are afforded no weight in the transfer analysis, and this factor does not favor maintaining the action in this District. *Telebrands Corp*, 2013 WL 4675558, at *8 (granting motion to transfer because plaintiff's action was anticipatory); *Church & Dwight*, 2010 WL 3907038 at *8 (concluding where action was filed "in anticipation of [defendant's] imminent suit in another, less favorable forum" the plaintiff's "choice of the New Jersey forum should be afforded little or no weight in the *Jumara* balancing test.").

**2. Private interest factor 2 (GV Art's preference) heavily favors transfer.**

Private interest factor 2 – a defendant's preference – favors transfer because GV Art is the natural plaintiff in this action. *Jumara*, 55 F.3d at 879. As the natural plaintiff, GV Art's choice of forum is entitled to deference so long as it has some nexus to the lawsuit. *Excalibur Reinsurance Corp*., 2015 WL 12806513, at *1 ("Defendants are the natural plaintiff in this action; they are the parties who allege that they have been wronged . . . defendants, even though they were the second filers, should be entitled to select their forum as long as it has some nexus to the suit."); *see also Church & Dwight*, 2010 WL 3907038, at *8 ("[c]onversely, [defendant's] choice of forum . . . should be given greater weight than that typically

granted defendants because [defendant's] claims formed the basis for [plaintiff's] claims."). There is no question GV Art is the natural plaintiff in this action, as GV Art is the only party to allege they have been wronged by FOCO's infringement, and GV Art would prefer to litigate this dispute in the Northern District of Ohio. [Vlosich Decl. at ¶ 15]. GV Art is an Ohio corporation with its employees, designers, owners, and brick-and-mortar stores located in northeastern Ohio. [*Id*. at ¶¶ 2, 10]. Accordingly, the harm to GV Art caused by FOCO's conduct occurred in Ohio. GV Art's selected forum has a clear nexus to this action as the forum where GV Art's headquarters and design team are located. [*Id*. at ¶ 2]. Accordingly, private interest factor 2 favors transfer to the Northern District of Ohio.

**3. Private interest factor 3 (place where the claims arose) is neutral.**

Private interest factor 3 concerns "whether the claim arose elsewhere." *Jumara*, 55 F.3d at 879. In assessing whether to grant a motion to transfer, "[t]he 'locus of the alleged culpable conduct' determines the place where the claim arose.'" *Telebrands Corp*., 2013 WL 4675558, at *7 (further citations omitted). In claims for trade dress infringement, "where the claim arose turns on which forum contains the center of gravity of the dispute, events, and transactions." *Allied Old English, Inc. v. Uwajimaya, Inc*., 2012 WL 3564172, at *4-5 (D.N.J. Aug. 16, 2012). In instances where a party has made sales of infringing goods in both forums, this factor weighs in favor of the forum with the majority of sales. *Allied Old English, Inc*.,

2012 WL 3564172, at *4-5 (granting motion to transfer to Washington where defendant sold infringing goods in both New Jersey and Washington, but "vast majority" of sales were in Washington).

Here, FOCO promotes that it ships materials across the continental United States, giving rise to a suggestion that the infringing conduct is occurring in multiple jurisdictions, including Ohio. *Telebrands Corp.,* 2013 WL 4675558, at *8 (concluding factor is neutral where "[p]laintiff states it is currently engaged in a nationwide test-marketing of [the infringing products]. The nationwide scope of the test-marketing suggests that the infringing conduct could be occurring in multiple jurisdictions."). That being said, it would be logical to infer that a good portion of the accused products – relating to professional and college sports teams in Ohio – would be sold to customers in Ohio. Additionally, all information related to the development of GV Art's designs is located in Ohio. [Vlosich Decl. at ¶ 10]; *Id.* ("[P]laintiff's products may not be produced in New Jersey and at least some of the allegedly infringing advertisements were created outside of the State. In comparison, all information relating to the development of Defendant's intellectual property appears to be located in Minnesota."). Given the national scope of FOCO's sales of infringing goods, private interest factor 3 may at worst be neutral to both the Northern District of Ohio and the District of New Jersey, but at best may favor the Northern District of Ohio given the particular ties of the accused products to Ohio

sports teams. *Id.* ("Because information relating to this dispute is located in multiple jurisdictions and it does not appear that the District of Minnesota would have any less access to the sources of proof necessary to reaching a final determination, the Court finds this factor is neutral to either forum.").

**4. Private interest factor 4 (convenience of parties) favors transfer.**

Given the disparity in the size between the parties, private interest factor 4 – the convenience of the parties – weighs in favor of transfer. Where, as here, an anticipatory plaintiff is the larger of the two corporations[7] and litigating in a foreign forum may pose a greater financial hardship to the defendant, this factor weighs in favor of transfer. *Telebrands Corp.,* 2013 WL 4675558, at *8. In instances where both parties will incur costs by the possibility of litigating a claim away from each of their respective home states, the balance will tip in favor of the party with a smaller size and fewer resources. *See Church & Dwight*, 2010 WL 3907038, at *11 ("[w]hile both parties would incur financial burden by litigating in a forum outside

[7] FOCO has over 500 employees (*see* https://www.linkedin.com/company/focoinc (last visited March 23, 2026)), whereas GV Art has fewer than 50 employees [Vlosich Decl. ¶ 13]. Even assuming the veracity of FOCO's assertion that GV Art's reported sales in 2025 exceeded $3.6 million, that figure is dwarfed in comparison to FOCO's size: $170 million company, over 500 employees, selling over 2 million items (*see* FOCO Founder Warns of Tariff Fallout on 'Minding Your Business' – NJBIA, https://njbia.org/videos/foco-founder-warns-of-tariff-fallout-on-minding-your-business/ (last visited March 23, 2026) (Lewis's statement at 10:25 to 10:35)).

its home state, on balance, this factor tips slightly in favor of [defendant] in light of its smaller size and fewer resources.").

As the smaller of the two parties, GV Art will be significantly impacted by the costs of litigation in this Court. [Vlosich Decl. at ¶¶ 14, 16]. GV Art is primarily run by brother George and Greg. [*Id*. at ¶ 14]. Requiring one or both of them to leave Ohio to litigate in New Jersey would create substantial hardship in operating the day-to-day business of GV Art. [*Id*.]. In contrast, FOCO is the larger corporation and appears to have previously litigated claims in other jurisdictions, including the Western District of Pennsylvania and Eastern District of New York.[8] On balance, this factor favors transfer of this action to GV Art's home jurisdiction in the Northern District of Ohio.

#### 5. Private interest factor 5 (convenience of witnesses) and factor 6 (location of books and records) are neutral at best.

Private interest factor 5 concerns "the convenience of witnesses" and factor 6 concerns "the location of books and records." *Jumara*, 55 F.3d at 879. Neither factor favors either forum.

First, given the locations of both parties, it is likely that one party's non-party witnesses will be unavailable in one of the fora. In instances like this, the convenience of non-party witnesses is a neutral factor. *Church & Dwight*,

---

[8] *See Wilson et al v. Team Beans, L.L.C.*, 2:25-cv-01087 (W.D. Pa. 2025) and *Martinez v. Team Beans, L.L.C.*, 1:20-cv-02223 (E.D.N.Y. 2020).

2010 WL 3907038, at *11 ("[b]ecause both parties intend to call third-party drug store chain witnesses in various areas of the country, the potential unavailability of these witnesses is in equipoise.").

Private interest factor 6 is also neutral because, regardless of the final forum, one party will be required to transfer its books and records to the forum. *Church & Dwight*, 2010 WL 3907038, at *11. Likewise, given the electronic nature of documents in the present time, there is no indication that records could not be produced in either district. *Id.*; *Telebrands Corp.,* 2013 WL 4675558, at *9. Accordingly, these factors are neutral.

**iii. The public factors support transfer.**

The public factors similarly support transferring to the Northern District of Ohio. As explained below, the Northern District of Ohio is better positioned to resolve this dispute given its congestion relative to the District of New Jersey and the claims arising under Ohio law.

**1. Public interest factor 3 (court congestion) favor transfer.**

For private interest factor 3, the Federal Judicial Caseload Statistics show that the Northern District of Ohio will likely be able to bring this case to trial sooner than the District of New Jersey. [Exhibit B to Declaration of Mark H. Anania, Federal Judicial Caseload Statistics, Table C-5 (Sept. 30, 2025), at 1-2, accessible at https://www.uscourts.gov/sites/default/files/document/jb_c5_0930.2025.pdf].

Specifically, the difference in the levels of congestion between the Courts reflects that trial is statistically likely to occur nearly twice as fast in the Northern District of Ohio. *Id*. (reporting median time to trial as about 36.6 months in this District versus only 18 months in the Northern District of Ohio).[9] Accordingly, this factor favors transfer.

**2. Public interest factors 5 and 6 (public policy of the fora, and familiarity with applicable state law) favor transfer.**

Public interest factors 5 and 6 concern "the public policies of the fora," and "the familiarity of the trial judge with the applicable state law in diversity cases." *Jumara*, 55 F.3d at 879. Each of these factors favor transfer. Where a court must interpret the intersection between federal and state laws as well as state public policies, public interest factors 5 and 6 weigh in favor of transfer. *Telebrands Corp*., 2013 WL 4675558, at *9 (granting motion to transfer to Minnesota court where action involved issues under Minnesota law and concluding "district judges in the District of Minnesota certainly have more experience applying applicable Minnesota law in similar cases" and "have more familiarity with the interaction of" Minnesota law and the Lanham Act).

[9] The most recent set of data issued on December 31, 2025 does not provide information regarding time to trial for the Northern District of Ohio. *See* Federal Judicial Caseload Statistics, Table C-5 (Dec. 31, 2025), at 1-2, accessible at https://www.uscourts.gov/data-news/data-tables/2025/12/31/statistical-tables-federal-judiciary/c-5.

While FOCO seeks a declaration that it has not infringed GV Art's trade dress under the Lanham Act, FOCO also seeks a judicial declaration that its "conduct does not constitute unfair competition under the Lanham Act or the Ohio Deceptive Trade Practices Act." [D.E 1 at ¶ 3]. The Northern District of Ohio is likely to be more familiar with the Ohio Deceptive Trade Practices Act and the public policy underpinning its enforcement. *See Telebrands Corp*., 2013 WL 4675558, at *9 (granting motion to transfer where "[t]he District of Minnesota would also have more familiarity with applicable Minnesota public policies."). This factor favors transfer to preserve judicial resources. *Automotive Service Ass'n. of New Jersey, Inc*., 2008 WL 5244282, at *3 (granting motion to transfer where claim in transferee venue differed from present claim but involved same parties). Accordingly, these factors weigh in favor of transfer.

**3. The remaining public interest factors 1, 2 and 4 do not favor this district.**

The remaining public interest factors concern (1) the "enforceability of the judgment" and (2) the "practical considerations that could make trial fast, expeditious, or inexpensive", and (4) "local interest in deciding local controversies at home." *Jumara*, 55 F.3d at 879. None of these factors favor the District of New Jersey.

For public interest factor 1, a judgment entered in either the District of New Jersey or the Northern District of Ohio would be enforceable because both are

federal courts. *See In re: Howmedica Osteonics Corp*., 867 F.3d 390, 410 (3d Cir. 2017) (in assessing "the enforceability of judgment" factor concluding factor is neutral because "'it is unlikely that there would be any significant difference in the difficulty of enforcing a judgment rendered by one federal forum or the other.'"). Public factor 1 is therefore neutral and does not favor the District of New Jersey.

Public interest factor 2 concerns "the practical considerations that could make trial fast, expeditious or inexpensive." *Jumara*, 55 F.3d at 879. In instances like this where one of the parties, its witnesses, and documents "will have to be transported from one forum to another regardless of where this case is litigated means that 'practical considerations that could make the trial easy, expeditious, or inexpensive' do not favor either forum" and the factor is neutral. *Snack Joint LLC v. OCM Group USA, NJ, Inc*., 2021 WL 4077583, at *12 (D.N.J. Sept. 8, 2021) (concluding public interest factor 2 is neutral where "[t]here is a likelihood that the parties, witnesses, and documents will need to be transferred from one forum to another regardless of where this case is litigated."). Here, this factor is neutral because, given the parties' locations, one party will need to transfer its witnesses and documents regardless of where the matter is litigated.

Public interest factor 4 – the local interest in deciding local controversies at home – likewise does not favor the District of New Jersey because it is not the locus of FOCO's accused conduct. *Snack Joint LLC*, 2021 WL 4077583, at *13 (granting

motion to transfer where public interest factor four indicated California was locus of infringement). As discussed above, the locus of the infringement which forms the basis of this action and GV Art's Ohio Action occurs in the forum in which the majority of the infringing sales occurred. *Id.* at *9. Because FOCO sells its infringing goods nationwide, this factor is neutral.

Of the six public factors weighed by this Court when considering a motion to transfer, three factors are neutral and three favor transfer. Accordingly, the public factors a court must consider when weighing a motion to transfer favor the transfer of this action to the Northern District of Ohio.

**iv. The balance of all relevant considerations favors transfer.**

Although the ultimate determination rests with the Court, the balance of all relevant factors – including the *Jumara* factors as well as the posture of this case as an anticipatory filing – suggest that this case can and should be transferred to the Northern District of Ohio. As the true plaintiff in this dispute, GV Art has a clear and meaningful preference to resolve this case. Afterall, this case is centered around intellectual property highlighting Ohio sporting teams designed by GV Art in Ohio, where its witnesses and documents reside. Although FOCO would certainly prefer to have its case decided in New Jersey, this dispute is only here because FOCO made an anticipatory filing to win a race to the courthouse. Under such circumstances, transfer is appropriate.

## IV. CONCLUSION

The parties are before this Court solely because FOCO filed this action to obtain a more convenient forum for itself while leading GV Art to believe settlement negotiations were ongoing. Accordingly, the Court should dismiss or transfer this action.

Dated: March 27, 2026

s/*Mark H. Anania*

Mark H. Anania
Kristen M. Harvilla
**STEVENS & LEE**
510 Carnegie Center Drive, Suite 400
Princeton, NJ 08540
Tel: 609-243-9111
mark.anania@stevenslee.com
kristen.harvilla@stevenslee.com

Christopher Joyce, Esq. (*pro hac vice*)
Caryn Peterson, Esq. (*pro hac vice*)
George Kennett, Esq. (*pro hac vice*)
**Flannery | Georgalis, LLC**
1621 Euclid Avenue, Floor 20
Cleveland, Ohio 44115
Tel: (216) 367-2120
cjoyce@flannerygeorgalis.com
cpeterson@flannerygeorgalis.com
gkennett@flannerygeorgalis.com

*Attorneys for Defendant GV Art and Design LLC*