**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| TEAM BEANS, L.L.C. d/b/a FOREVER COLLECTIBLES,<br><br>Plaintiff,<br><br>v.<br><br>GV ART and DESIGN, LLC,<br><br>Defendant. | Case No. 2:25-cv-17274 (BRM) (JBC)<br><br>**OPINION** |

**MARTINOTTI, DISTRICT JUDGE**

Before the Court is a Motion to Dismiss or Transfer ("Motion") filed by Defendant GV Art and Design, LLC ("GV Art"). (ECF No. 43.) Plaintiff Team Beans, L.L.C. d/b/a Forever Collectibles ("FOCO") opposed the Motion (ECF No. 44), and GV Art filed a Reply (ECF No. 46). Having reviewed and considered the parties' submissions filed in connection with the Motion and having declined to hold oral argument pursuant to Federal Rule of Civil Procedure ("Rule") 78(b), for the reasons set forth below and for good cause having been shown, GV Art's Motion is **DENIED**.

## I. BACKGROUND

For purposes of this Motion, which the Court construes as a motion to dismiss or transfer for improper venue,[1] the Court accepts the factual allegations in FOCO's Complaint (ECF No. 1)

[1] Generally, "it is not necessary for the plaintiff to include allegations in his complaint showing that venue is proper," *Great W. Mining & Mineral Co. v. ADR Options, Inc.*, 434 F. App'x 83, 86–87 (3d Cir. 2011), so the Court may "consider . . . evidence outside of the complaint," *Skull Shaver, LLC v. The Cut Buddy*, Civ. A. No. 24-10116, 2025 WL 4066528, at *1 n.2 (D.N.J. Oct. 14, 2025),

as true and draws all inferences in the light most favorable to FOCO. *See Worldcom, Inc. v. Graphnet, Inc.*, 343 F.3d 651, 653 (3d Cir. 2003). However, "when confronted with a motion to dismiss for improper venue, the Court may consider both the complaint and evidence outside the complaint." *Bristol-Myers Squibb Co. v. Aurobindo Pharma USA Inc.*, Civ. A. No. 17-374, 2018 WL 5109836, at *2 (D. Del. Oct. 18, 2018) (citing 14D Wright & Miller, Federal Practice & Procedure § 3826 (4th ed. 2017)). Accordingly, the Court "will accept any venue-related allegations in the complaint as true, unless those allegations are contradicted by the defendant's affidavits." *Id.* (first citing *Bockman v. First Am. Mktg. Corp.*, 459 F. App'x 157, 158 n.1 (3d Cir. 2012); and then citing *In re First Solar, Inc. Derivative Litig.*, Civ. A. No. 12–417, 2013 WL 817132, at *2 (D. Del. Mar. 4, 2013)). The Court may also "consider affidavits submitted by the plaintiff." *Id.* (citing *Bockman*, 459 F. App'x at 161).

### A. Factual Background

FOCO designs, manufactures, and distributes licensed sports and entertainment merchandise in the United States. (ECF No. 1 ¶ 14.) In designing its apparel, FOCO incorporates illustrations and other designs featuring "licensed team and league names," as well as "trademarks with decorative, ornamental graphic layouts that reflect common styles and trends in the licensed sports merchandise industry." (*Id.* ¶ 17.) GV Art, a "boutique creative studio" with its own website and three Ohio-based locations, specializes in "original sports-themed artwork, apparel, and related merchandise." (*Id.* ¶¶ 19–20.)

On September 25, 2025, GV Art sent FOCO a formal demand letter, which threatened litigation based on an allegation that "FOCO's [t-shirt] illustration designs infringed on GV Art's

*report and recommendation adopted sub nom.*, Civ. A. No. 24-10116, 2026 WL 836469 (D.N.J. Mar. 26, 2026).

purported trade dress rights . . . , violated the Ohio Deceptive Trade Practices Act, and constituted" unfair competition under federal law. (*Id.* ¶¶ 23–24.) GV Art demanded FOCO to "immediately remove the accused products from commerce, preserve all related documents, and cease any further use of [GV Art's] claimed designs." (*Id.* ¶ 24.) FOCO has denied that it has infringed on any of GV Art's protectable trade dress or other intellectual property rights and "requested clarification regarding the specific elements composing GV Art's alleged trade dress." (*Id.* ¶ 25.) According to FOCO, "GV Art refused to provide any definition" and "escalated its demands by [both] requiring removal of FOCO's products and payment of a[] . . . lumpsum amount by November 5, 2025." (*Id.*)

### B. Procedural History

#### 1. *FOCO v. GV Art* ("November 6, 2025 DNJ Action")

On November 6, 2025, FOCO filed the matter now before the Court, seeking a declaratory judgment that "(i) GV Art owns no protectable trade dress in the design at issue[,] and (ii) FOCO has not infringed [on] GV Art's trade dress" under the Lanham Act. (ECF No. 1 ¶ 51.) Pursuant to the Court's preferences, GV Art filed a pre-motion conference letter on December 23, 2025. (ECF No. 8.) FOCO filed a response on January 16, 2026. (ECF No. 12.) The Court held a Case Management/Settlement Conference on March 3, 2026. (ECF No. 40.) The conference did not result in a settlement. (*Id.*) On March 11, 2026, the Court ordered the parties to proceed with motion practice. (ECF No. 42.)

#### 2. *GV Art v. FOCO* ("November 19, 2025 ND Ohio Action")

Nearly two weeks after FOCO filed the November 6, 2025 Action, GV Art filed a case against FOCO, which remains pending before the Hon. Charles E. Fleming, U.S.D.J., in the U.S. District Court for the Northern District of Ohio ("ND Ohio"). Compl. at 1, *GV Art and Design,*

*LLC v. Team Beans, L.L.C.*, Civ. A. No. 25-2525 (N.D. Ohio Nov. 19, 2025) (ECF No. 1 at 1). The November 19, 2025 ND Ohio Action includes the following causes of action: trade dress, unfair competition, and false designation under the Lanham Act, as well as deceptive practices under the Ohio Deceptive Trade Practices Act and both trade dress infringement and unfair competition under Ohio common law. (*Id.* ¶¶ 63–98.) On December 22, 2025, GV Art filed a Motion to Dismiss the Complaint Pursuant to the First-to-File Rule and Rule 12(b)(6). Mot. To Dismiss, *GV Art and Design, LLC v. Team Beans, L.L.C.*, Civ. A. No. 25-2525 (N.D. Ohio Dec. 22, 2025) (ECF No. 5). On March 18, 2026, GV Art moved for leave to file an amended complaint, in part, to add copyright infringement claims. Mot. for Leave to File Am. Compl., *GV Art and Design, LLC v. Team Beans, L.L.C.*, Civ. A. No. 25-2525 (N.D. Ohio Mar. 18, 2026) (ECF No. 14 at 5). Judge Fleming is holding both motions in abeyance pending the resolution of the motion to dismiss in the November 6, 2025 DNJ Action. Order, *GV Art and Design, LLC v. Team Beans, L.L.C.*, Civ. A. No. 25-2525 (N.D. Ohio Apr. 17, 2026) (ECF No. 17 at 1–2).

## II. Legal Standard

### A. First-Filed Rule

Under the first-filed rule, a district court has the discretion to "enjoin the subsequent prosecution of proceedings involving the same parties and the same issues already before another district court." *Spellman v. Express Dynamics, LLC*, 150 F. Supp. 3d 378, 386 (D.N.J. 2015) (citing *E.E.O.C. v. Univ. of Pa.*, 850 F.2d 969, 971 (3d Cir. 1988)). "In all cases of federal concurrent jurisdiction, the court which first has possession of the subject must decide it." *Wheaton Indus., Inc. v. Aalto Sci., Ltd.*, Civ. A. No. 12-6965, 2013 WL 4500321, at *2 (D.N.J. Aug. 21, 2013) (internal citations and quotations omitted). "[T]he rule's primary purpose is to avoid burdening the federal judiciary and to prevent the judicial embarrassment of conflicting judgments." *E.E.O.C.*,

850 F.2d at 977. "Yet, fundamental fairness dictates the need for fashioning a flexible response to the issue of concurrent jurisdiction." *Id.* (quotations omitted) (quoting *Church of Scientology of Cal. V. U.S. Dep't of Army*, 611 F.2d 738, 750 (9th Cir. 1979)). As such, there are some exceptions to the first-filed rule, including: (1) rare or extraordinary circumstances; (2) inequitable conduct; (3) bad faith; (4) forum shopping; (5) the subsequently filed action further develops the case; and (6) the first party initiated suit in one forum in anticipation of the other party's imminent suit in a less favorable forum. *See id.* 976–77.

**B. 28 U.S.C. § 1404(a) ("Section 1404(a)")**

"A federal district court may transfer a civil action to a different venue under . . . [Section] 1406(a)." *Bonavito v. President & Fellows of Harvard Coll.*, Civ. A. No. 20-14657, 2021 WL 2722578, at *5 (D.N.J. June 30, 2021). "To determine which provision applies, the court first ascertains whether venue is proper in the original forum." *Adams, Nash & Haskell, Inc. v. United States*, Civ. A. No. 19-3529, 2020 WL 1305620, at *1 (D.N.J. Mar. 19, 2020) (citing *Lafferty v. St. Riel*, 495 F.3d 72, 78 (3d Cir. 2007)). "Section 1404(a) provides for the transfer of a case where both the original and the requested venue are proper." *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 878 (3d Cir. 1995). "Section 1406[(a)], on the other hand, applies where the original venue is improper and provides for either transfer or dismissal of the case." *Id.*

Section 1404(a) states: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." 28 U.S.C. § 1404(a). When a plaintiff has laid a proper venue, "[t]he decision whether to transfer falls in the sound discretion of the trial court." *Park Inn Int'l, L.L.C. v. Mody Enters., Inc.*, 105 F. Supp. 2d

370, 377 (D.N.J. 2000). "[T]he burden of establishing the need for transfer . . . rests with the movant." *Jumara*, 55 F.3d at 879.

The court must consider three factors when determining whether to grant a transfer under Section 1404: (1) the convenience of the parties; (2) the convenience of the witnesses; and (3) the interests of justice. *Liggett Grp., Inc. v. R.J. Reynolds Tobacco Co.*, 102 F. Supp. 2d 518, 526 (D.N.J. 2000) (citing 28 U.S.C. § 1404(a)). These factors are not exclusive and must be applied through a "flexible and individualized analysis . . . made on the unique facts presented in each case." *Id.* at 527; *see also Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964) ("[T]he purpose of . . . [Section 1404(a)] is to prevent the waste 'of time, energy and money' and 'to protect litigants, witnesses and the public against unnecessary inconvenience and expense . . . .'"). The first two factors have been refined into a non-exhaustive list of private and public interests that courts should consider. *See Jumara*, 55 F.3d at 879–80.

The private interests a court should consider include: (1) plaintiff's forum preference as manifested in the original choice; (2) the defendant's preference; (3) whether the claim arose elsewhere; (4) the convenience of the parties as indicated by their relative physical and financial condition; (5) the convenience of the witnesses; and (6) the location of books and records. *Danka Funding, L.L.C. v. Page, Scrantom, Sprouse, Tucker & Ford, P.C.*, 21 F. Supp. 2d 465, 474 (D.N.J. 1998) (citing *Jumara*, 55 F.3d at 879). The public interests a court should consider include: (1) the enforceability of the judgment; (2) practical considerations that could make the trial easy, expeditious, or inexpensive; (3) the relative administrative difficulty in the two fora resulting from court congestion; (4) the local interest in deciding local controversies at home; (5) the public policies of the fora; and (6) the familiarity of the trial judge with the applicable state law in diversity cases. *Id.* (citing *Jumara*, 55 F.3d at 879–80).

## III. DECISION

GV Art moves to dismiss the November 6, 2025 DNJ Action by invoking exceptions to the first-filed rule. (ECF No. 43-1 at 6–10.) More specifically, GV Art argues FOCO's November 6, 2025 DNJ Action constitutes an anticipatory filing and a coercive suit. (*Id.*) Dismissal is proper, according to GV Art, because the Court should decline to exercise discretionary jurisdiction under the Declaratory Judgment Act given the coercive nature of the November 6, DNJ 2025 Action. (*Id.* at 10–12.) Beyond dismissal, GV Art puts forth an alternative argument: Under Section 1404(a), the Court should transfer this matter to ND Ohio. (*Id.* at 12–26.)

According to FOCO, however, the Court should apply the first-filed rule as none of the exceptions to that rule apply here. (ECF No. 44 at 7–17.) FOCO also takes issue with GV Art's request that the Court decline to exercise discretion pursuant to the Declaratory Judgment Act because this action involves an actual controversy, serves a useful purpose, and will resolve the parties' core dispute. (*Id.* at 17–21.) Moreover, FOCO disagrees with GV Art's assessment of the transfer factors; to FOCO, the Court should decline to transfer this matter. (*Id.* at 21–29.)

### A. First-Filed Rule

As FOCO describes it, the chronology is undisputed. (ECF No. 44 at 8.) While there are two pending matters, FOCO filed first in the U.S. District Court for the District of New Jersey ("DNJ"). *See supra* Section I.B. It is also undisputed that the two pending matters involve identical parties and substantially similar issues.[2] *See supra* Section I.B. Accordingly, the question before

[2] FOCO seeks a declaration from this Court that its conduct does not infringe on or violate the trade dress rights GV Art asserted in its demand letter (ECF No. 1 ¶ 51), while GV Art asserts those same core trade-dress allegations affirmatively in the November 19, 2025 ND Ohio Action, Complaint at 1, *GV Art and Design, LLC v. Team Beans, L.L.C.*, Civ. A. No. 25-2525 (N.D. Ohio Nov. 19, 2025). At this time, given Judge Fleming is holding GV Art's motion to file an amended complaint in abeyance, GV Art's Complaint does not yet include various copyright claims. Order

the Court as to the first-filed rule's applicability here is whether an exception to that rule applies. *See Mahmoud v. Rite Aid Corp.*, Civ. A. No. 11-6363, 2012 WL 3560645, at *4 (D.N.J. Aug. 16, 2012) (holding the first-filed rule applies only to proceedings already before another district court, which involve the same issues and the same parties); *Catalent, Inc. v. Danby*, Civ. A. No. 320-12368, 2020 WL 13856504, at *7, 9 (D.N.J. Nov. 2, 2020) (Martinotti, J.) (explaining "several exceptional circumstances may justify a departure from the first-to-file rule[,]" including the bad faith and anticipatory filing exceptions). Despite GV Art's arguments to the contrary, no exception applies because FOCO did not act in bad faith when it filed the November 6, 2025 DNJ Action. *Id.* at *10 (explaining some evidence of forum shopping or bad faith is needed before courts find a first-filed case was "improperly anticipatory").

To establish the bad faith, the party that first filed an action must have done so in apparent anticipation of "imminent judicial proceedings." *Pai v. Reynolds Foil, Inc.*, Civ. A. No. 10-1465, 2010 WL 1816256, at *5 (D.N.J. May 5, 2010) (quoting *Transcore, L.P. v. Mark IV Indus. Corp.*, Civ. A. No. 09–2789, 2009 WL 3365870, at *5 (E.D. Pa. Oct. 15, 2009)). Courts in the Third Circuit have found evidence of bad faith when a party filed a suit before the expiration of a deadline (or a grace period) set out by the opposing party for concluding settlement negotiations or in a cease-and-desist letter. *Sinclair Cattle Co. v. Ward*, 80 F. Supp. 3d 553, 561 (E.D. Pa. 2015); *Church & Dwight v. Mayer Labs., Inc.*, Civ. A. No. 08-5743, 2010 WL 3907038, at *8 (D.N.J. Sept. 28, 2010) (citing *Keating Fibre Int'l, Inc. v. Weyerhaeuser*, 416 F. Supp. 2d 1048, 1052 (E.D. Pa. 2006)); *Pai*, 2010 WL 1816256, at *5 (citing *Keating Fibre Int'l*, 416 F. Supp. 2d at 1052).

---

at 1–2, *GV Art and Design, LLC v. Team Beans, L.L.C.*, Civ. A. No. 25-2525 (N.D. Ohio April 17, 2026). Even with those copyright claims, however, the issues in the two pending matters would nonetheless share a "high degree of similarity," which is sufficient for purposes of the first-filed rule. *Muhammad v. State Farm Indem. Co.*, 719 F. Supp. 3d 397, 403 (D.N.J. 2024) (collecting cases).

"Courts in the Third Circuit have declined to find bad faith where 'litigation was in the air,' but no definite date had been set." *Bright Ideas Funding Grp., LLC v. Magic*, Civ. A. No. 12-1714, 2012 WL 13029764, at *7 (D.N.J. Sept. 4, 2012) (quoting *Keating Fibre Int'l*, 416 F. Supp. 2d at 1052).

There is insufficient indicia of bad faith here. After flagging potential infringement, on September 25, 2025, GV Art sent FOCO a "cease-and-desist" letter. (ECF No. 43-5 ¶ 4; ECF No. 44-2 ¶ 4.) FOCO's counsel contacted GV Art's counsel thereafter and suggested a call, which took place on October 1, 2025, to "de-escalat[e] the matter." (ECF No. 43-5 ¶ 5; ECF No. 44-2 ¶¶ 5–6.) On that call, FOCO's counsel "requested that GV Art identify with specificity the elements of GV Art's alleged trade dress so that FOCO could meaningfully evaluate the allegations being asserted against it . . . [and] [to] determine whether any business resolution was possible." (ECF No. 44-2 ¶ 6.) Critically, GV Art declined to do so. (*Id.* ¶¶ 6–7.) On October 17, 2025, GV Art's counsel contacted FOCO "to see if FOCO wished to continue their discussions or whether GV Art should proceed with its complaint." (ECF No. 43-5 ¶ 6.) "FOCO's counsel responded that same day stating that FOCO was open to additional discussions" (*id.*) but that "GV Art first needed to identify the specific designs or trade dress element it contended were proprietary or otherwise 'particularly offensive'" (ECF No. 44-2 ¶ 8).

On October 29, 2025, GV Art sent a demand letter to FOCO and asked that FOCO respond to the letter by November 5, 2025. (ECF No. 43-5 ¶ 6; *see also* ECF No. 1 ¶ 25.) Later that day, another lawyer at FOCO's counsel's law firm responded and explained FOCO's counsel's father had passed away, so "FOCO would not be in a position to respond to the demand until counsel returned within 'a week or so.'"[3] (ECF No. 43-5 ¶ 6.) Based on GV Art's telling, this October 29,

[3] As discussed in greater depth below, the Court rejects GV Art's characterization of this response as a "request" for more time to respond. *See Fisher Bros. Sales, Inc. v. United States*, 46 F.3d 279,

2025 back-and-forth amounted to a request for additional time beyond November 5, 2025, to respond to GV Art's demand letter and GV Art's agreement to that request.[4] (*Id.*) According to FOCO, however, FOCO's counsel's colleague merely replied that there had been a death in FOCO's counsel's family and that FOCO's counsel "would be unavailable for approximately a week due to the funeral and related family matters," which GV Art's counsel "acknowledged." (ECF No. 44-2 ¶ 10.)

On November 6, 2025, after returning from his father's funeral, FOCO's counsel filed the November 6, 2025 DNJ Action "[b]ased on GV Art's repeated refusal to identify its alleged trade dress despite multiple requests, its repeated litigation threats, and its escalating monetary demands." (*Id.* ¶¶ 12–13.)

While the filing of the November 6, DNJ 2026 Action raises some red flags given the demand letter included a November 5, 2025 response deadline, the Court is not persuaded that FOCO acted in bad faith. As other courts in the Third Circuit have opined, "a party should not be 'forced' to wait for 'the initiative of the antagonist,' when it can pursue a declaratory judgment action instead of waiting for the filing of an affirmative action." *Tekno Prods., Inc. v. Glove Trends Inc.*, Civ. A. No. 19-91, 2019 WL 7184544, at *5 (D.N.J. Dec. 26, 2019) (quoting *Keating Fibre Int'l*, 416 F. Supp. 2d at 1052). Leading up to the filing of the November 6, 2025 DNJ Action, on the initial October 1, 2025 call between the parties' counsel and on October 17, 2025, FOCO

---

286 (3d Cir. 1995). Nor does the Court accept GV Art's framing of its response as an agreement to an extension of time. *See id.*

[4] GV Art's counsel's declaration includes the following language: "FOCO responded, through different counsel, the same day and asked for additional time beyond November 5 to respond in light of a death in the family of one of its counsel, *specifically, that FOCO would not be in a position to respond to the demand until counsel returned within 'a week or so.'*" (ECF No. 43-5 ¶ 6 (emphasis added).)

informed GV Art it needed to know the "elements of GV Art's alleged trade dress so that FOCO could meaningfully evaluate the allegations being asserted against it." (ECF No. 44-2 ¶¶ 6, 8.) Nonetheless, FOCO asserts—and GV Art does not dispute—GV Art did not provide the information FOCO requested. (*Id.* ¶¶ 6–9.)

Additionally, looming in the background of the settlement talks was not only the supposed harm to GV Art based on FOCO's alleged infringement, but also the business and legal uncertainty FOCO faced over whether it could continue marketing and selling some of its licensed merchandise. *Telebrands Corp. v. Exceptional Prods. Inc.*, Civ. A. No. 11-2252, 2011 WL 6029402, at *2 (D.N.J. Dec. 5, 2011) ("The parties have adverse legal interests because they have potentially conflicting claims to certain, articulated intellectual properties. The controversy is substantial because it affects the business of both parties and their respective abilities to sell their products."). Despite FOCO's obvious need for clarity, GV Art asks the Court to find FOCO raced to the courthouse in bad faith. Perhaps, to GV Art, an exercise of good faith would have meant FOCO holding off on seeking clarity from this Court via a declaratory judgment action, notwithstanding GV Art's refusal to identify the allegedly protectable trade dress and escalation of its monetary demand. (*See* ECF No. 43-1 at 8–9.) The Court disagrees. To accept that argument would "force" those accused of infringement "to wait for 'the initiative of the antagonist,' when it can pursue a declaratory judgment action instead of waiting for the filing of an affirmative action." *Tekno Prods., Inc.*, 2019 WL 7184544, at *5 (quoting *Keating Fibre Int'l*, 416 F. Supp. 2d at 1052). Additionally, considering the facts in this matter, accepting that argument would distort the equitable principles underlying the first-to-file rule. *Univ. of Pa.*, 850 F.2d at 969, *aff'd*, 493 U.S. 182 (1990) (citing *Columbia Plaza Corp. v. Security Nat. Bank*, 525 F.2d 620, 621 (D.C. Cir. 1975)) ("The letter and spirit of the first-filed rule, therefore, are grounded on equitable

principles."). Because GV Art declined time and again to provide FOCO with the information it needed to arrive at a compromise, notions of equity support FOCO's decision to go forward with filing suit to seek a declaratory judgment from the Court.

To be sure, the demand letter included a warning of a November 5, 2025 deadline (ECF No. 43-5 ¶ 6; *see also* ECF No. 1 ¶ 25), and some district courts in the Third Circuit have considered it evidence of bad faith when a party filed a suit before the expiration of a deadline (or a grace period) set out by the opposing party for concluding settlement negotiations or in a cease-and-desist letter. *See, e.g.*, *Sinclair Cattle Co.*, 80 F. Supp. 3d at 561. But, here, FOCO filed suit on November 6, 2025 (ECF No. 1)—the day after the deadline. *Catalent, Inc.*, 2020 WL 13856504, at *9 (declining to find bad faith in the party who filed first after the grace period expired).

And while another lawyer explained to GV Art's counsel that FOCO's counsel had a death in his family such that "FOCO would not be in a position to respond to the demand until counsel returned within 'a week or so'" (ECF No. 43-5 ¶ 6), the Court need not and does not accept GV Art's characterization that these facts amounted to a request for and an agreement to an extension of time.[5] *Fisher Bros. Sales, Inc. v. United States*, 46 F.3d 279, 286 (3d Cir. 1995). FOCO did not "attempt to preempt an imminent [lawsuit]" in an "unfavorable" tribunal. *Cf. Univ. of Pa.*, 850 F.2d at 977. Instead, FOCO engaged in settlement talks and repeatedly requested information from GV Art—which GV Art repeatedly failed to provide—before filing suit in New Jersey, where it

[5] While GV Art asserts FOCO "asked for additional time beyond November 5 to respond in light of a death in the family of one of its counsel," GV Art further explains this description derives "*specifically*" from the following facts: "*that FOCO would not be in a position to respond to the demand until counsel returned within 'a week or so.'*" (ECF No. 43-5 ¶ 6 (emphasis added).) That comment, however, was not tantamount to a request or an ask for an extension of time—it was merely an explanation of FOCO's circumstances.

designs, markets, and sells the products at issue. (ECF No. 1 ¶¶ 5, 8.) That is not bad faith.[6] In the absence of any evidence of bad faith, the Cout declines to find the November 6, 2025 DNJ Action was "improperly anticipatory." *Catalent, Inc.*, 2020 WL 13856504, at *10 (quoting *Eagle Pharm., Inc. v. Eli Lilly & Co.*, Civ. A. No. 17-6415, 2018 WL 3492145, at *4 (D.N.J. July 20, 2018)). The Court's departure from the first-filed rule is therefore unwarranted. *Id.*

**B. Declaratory Judgment Act**

Focusing on the discretionary nature of the Declaratory Judgment Act's grant of jurisdiction, GV Art urges the Court not to entertain FOCO's suit. (ECF No. 43-1 at 11.) To make this argument, GV Art points out one distinction between the two lawsuits at issue: The November 6, 2025 DNJ Action asks only for a declaratory judgment, whereas the November 19, 2025 ND Ohio Action "asserts coercive claims for FOCO's [alleged] infringement of its trade dress and unfair competition involving the same parties, . . . facts, and . . . disputes." (*Id.* at 11–12.) That is not a reason for the Court to decline jurisdiction. *Reifer v. Westport Ins. Corp.*, 751 F.3d 129, 140 (3d Cir. 2014) (requiring district courts to "consider four general factors: (1) the likelihood that a federal court declaration will resolve the uncertainty of obligation which gave rise to the controversy; (2) the convenience of the parties; (3) the public interest in settlement of the uncertainty of obligation; and (4) the availability and relative convenience of other remedies"). At best, GV Art's argument shares some commonality with the second factor: the convenience of the parties. (ECF No. 43-1 at 11 n.4.)

[6] "In addition to the foregoing, the bad faith inquiry also encompasses consideration of the amount of time between the declaratory and affirmative filings, with a shorter period indicating bad faith." *IMS Health, Inc. v. Vality Tech. Inc.*, 59 F. Supp. 2d 454, 463 (E.D. Pa. 1999) (citing *Hanson v. Metro–Goldwyn–Mayer Inc.*, 932 F. Supp. 104, 106 (S.D.N.Y. 1996)). Here, there were almost two weeks between the filing of the two matters, which also casts doubt on FOCO's supposed bad faith. *Cf. Hanson*, 932 F. Supp. at 106 ("[T]he two cases were filed only one business day apart . . . .").

The Court turns first to convenience of the parties factor—it provides no sound reason for the Court not to preside over this case. As FOCO rightly argues, GV Art would not be prejudiced if this case remains in New Jersey, because it would have the opportunity to "assert . . . [the] counterclaims it believes it has arising from the same nucleus of facts, including the same trade-dress and related claims it has asserted or seeks to assert in" the November 19, 2025 ND Ohio Action. (ECF No. 44 at 10 (citing Fed. R. Civ. P. 13(a)).) In other words, it *would* be more convenient for one Court to decide both the question of whether to grant FOCO declaratory relief and whether FOCO is liable for trade dress infringement (and copyright infringement), but *both* this Court and its sister court can provide that convenience because both courts are equally equipped to decide these questions.

As the Third Circuit has explained, "in determining whether [to] defer[] to the second-filed action for coercive relief," district courts in this circuit "c[an] appropriately consider . . . [what] [is] '*right and equitable under the circumstances*.'" *Honeywell Int'l Inc. v. Int'l Union, United Auto., Aerospace & Agr. Implement Workers of Am.*, 502 F. App'x 201, 206 (3d Cir. 2012) (emphasis added) (quoting *Univ. of Pa.*, 850 F.2d at 977) (holding the district court in New Jersey did not abuse its discretion when it declined to exercise its Declaratory Judgment Act discretion given that "Michigan had a greater nexus to the dispute" and Honeywell decided "to sue before providing the required statutory notice"). In other circuits, however, there appears to be a firmer rule that preference lies with the coercive action. *See, e.g.*, *Rsch. Automation, Inc. v. Schrader–Bridgeport Int'l, Inc.*, 626 F.3d 973, 980 (7th Cir. 2010) (noting "where the parallel cases involve a declaratory judgment action and a mirror-image action seeking coercive relief . . . [courts] ordinarily give priority to the coercive action, regardless of which case was filed first"). Here, after assessing whether deference to November 19, 2025 ND Ohio Action would be "right and equitable

under the circumstances," the Court determines there is no appropriate exception to the applicability of the first-to-file rule, which further supports retaining jurisdiction over the November 6, 2025 DNJ Action. *Honeywell Int'l Inc.*, 502 F. App'x at 206 (quoting *Univ. of Pa.*, 850 F.2d at 977).

As to the remaining relevant factor,[7] namely "the likelihood that a federal court declaration will resolve the uncertainty of obligation which gave rise to the controversy" and "the availability and relative convenience of other remedies," that factor militates in favor of this Court retaining jurisdiction. *Reifer*, 751 F.3d at 140. The respective relief sought by the parties are two sides of the same coin, and the Court's declaration will resolve the issues of whether FOCO is actually infringing on GV Art's trade dress and whether GV Art is owed redress for FOCO's alleged infringement. *Id.* Therefore, the Court sees no reason to decline jurisdiction and dismiss the action.

[7] The public interest factor "do[es] not weigh heavily in this case" as it is "no[t] . . . particularly implicated" by the facts here given that the confusion is merely over who holds the right to utilize the trade dress at issue for purposes of selling various merchandise. *United States v. Com. of Pa., Dep't of Env't Res.*, 923 F.2d 1071, 1077 n.9 (3d Cir. 1991). To the extent this factor is relevant, it would weigh in favor of retaining jurisdiction because a declaration in FOCO's favor would lead to vigorous competition in the marketplace, and a declaration in GV Art's favor would lead to avoiding consumer confusion. *Brighton Collectibles, Inc. v. Coldwater Creek, Inc.*, Civ. A. No. 06-1848, 2009 WL 10671767, at *2 (S.D. Cal. Jan. 23, 2009) (explaining trade dress law exists to protect the public from consumer confusion and the "removal of infringing products from the market serves the public interest"). As to the factor regarding the availability and relative convenience of other remedies, that factor also tips in favor of the Court retaining jurisdiction under these circumstances. *Reifer*, 751 F.3d at 140. At the risk of redundancy, the Court will repeat the relief sought by both parties: FOCO wants to know if it is infringing, and GV Art wants recourse for FOCO's alleged infringement. While the coercive action may incidentally resolve the question of whether FOCO is infringing, as explained, like its sister court, this Court can decide whether the relief sought in the coercive action is owed and whether FOCO is infringing. *See* Fed. R. Civ. P. 13(a) ("A pleading must state as a counterclaim any claim that—at the time of its service—the pleader has against an opposing party if the claim . . . arises out of the transaction or occurrence that is the subject matter of the opposing party's claim . . . .").

**C. Transfer**

Based on GV Art's understanding of the balance of the private and public interest factors, GV Art asks the Court to make use of "an independent basis to transfer [the November 6, 2025] [A]ction under [Section] 1404(a)." (ECF No. 43-1 at 13, 16–26.) FOCO disagrees (ECF No. 44 at 22–29), as does this Court.

GV Art does not dispute that DNJ is a proper venue, so "[t]he decision whether to transfer falls in the sound discretion" of this Court.[8] *Park Inn Int'l*, 105 F. Supp. 2d at 377. "[T]he burden of establishing the need for transfer . . . rests with the movant," GV Art.[9] *Jumara*, 55 F.3d at 879. GV Art has not met its burden.

**1. Private Interest Factors**

The Court turns first to the first three private interest factors, which are "somewhat interrelated." *Bargo v. Apple Inc.*, Civ. A. No. 25-2025, 2026 WL 1864201, at *4 (D.N.J. June 29, 2026). Because the Court does not agree that the November 6, 2025 DNJ Action was anticipatory,

[8] To the extent GV Art argues venue is not proper because the November 6, 2025 DNJ Action was filed anticipatorily, as discussed, because GV Art has failed to show FOCO filed that lawsuit in bad faith, the Court does not find FOCO filed anticipatorily. *See supra* Section III.A.

[9] GV Art rightly argues the November 6, 2025 DNJ Action could have been brought in ND Ohio because that court would have subject matter jurisdiction over FOCO's claims, GV Art is subject to personal jurisdiction in ND Ohio, and venue would likewise be proper. (ECF No. 43-1 at 14–15.) First, like this Court, ND Ohio would have subject matter jurisdiction because the claim arises under the Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq.*, and the Lanham Act, 15 U.S.C. §§ 1051 *et seq*. (ECF No. 1 ¶¶ 45–52.) Second, GV Art is subject to personal jurisdiction in ND Ohio because its principal place of business is in Ohio. (*Id.* ¶ 5.) Third, venue would be proper pursuant to 28 U.S.C. § 1391, in part, because, as discussed, GV Art, a limited liability company and the sole defendant (ECF No. 1 ¶ 5), is subject to personal jurisdiction in ND Ohio. 28 U.S.C. § 1391 ("A civil action may be brought in . . . a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located . . . . For all venue purposes[,] an entity . . . shall be deemed to reside, if a defendant, in any judicial district in which such defendant is subject to the court's personal jurisdiction with respect to the civil action in question . . . .").

the first factor—FOCO's forum preference—weighs against transfer. *See Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241 (1981) ("[A] plaintiff's choice of forum should rarely be disturbed."). Indeed, within the Third Circuit, "[a] plaintiff's choice of 'forum is a paramount consideration in any determination of a transfer request,' [and] 'should not be lightly disturbed.'" *Def. Distributed v. Platkin*, 617 F. Supp. 3d 213, 233 (D.N.J. 2022) (first quoting *Shutte v. Armco Steel Corp.*, 431 F.2d 22, 25 (3d Cir. 1970); and then quoting *Jumara*, 55 F.3d at 879). GV Art's choice of forum—the second private interest factor—is, on balance, afforded some deference but "considerably less weight than [FOCO]'s." *See N. Am. Commc'ns, Inc. v. Eclipse Acqui Inc.*, Civ. A. No. 17-167, 2018 WL 651795, at *6 n.10 (W.D. Pa. Jan. 31, 2018) (internal quotation marks omitted) (quoting *Conroy v. Pa. Tpk. Comm'n*, Civ. A. No. 10–1234, 2011 WL 578779, at *2 (W.D. Pa. Jan. 19, 2011)). "The third private interest factor—where the claims arose—is 'most critical to the Court's analysis.'" *Bargo*, 2026 WL 1864201, at *4 (quoting *Metro. Life Ins. Co. v. Bank One, N.A.*, Civ. A. No. 03-1882, 2012 WL 4464026, at *6 (D.N.J. Sept. 25, 2012)). That factor tips against transferring this matter because a declaratory judgment action seeking a declaration of non-infringement arises where the alleged infringer "created the allegedly infringing" material. *See Dermansky v. Young Turks, Inc.*, Civ. A. No. 22-345, 2023 WL 4351340, at *3 (D. Del. July 5, 2023) (concluding the third factor favored transfer to the U.S. District Court for the Central District of California, in part, because the defendant "created the allegedly infringing videos in California, and [the] [d]efendant operate[d] and maintain[ed] its servers out of central California"). Again, GV Art's "allegations of trade dress infringement are directed at FOCO, . . . regarding products

designed, marketed, and sold from New Jersey." (ECF No. 1 ¶¶ 5, 8.) Taken together, the first three private interest factors do not support transfer.[10]

Next, the Court turns to the remaining three private interest factors: the convenience of the parties, the convenience of the witnesses, and the location of books and records. The fourth private interest factor—the convenience of the parties—is a tough call. Here, "both parties would incur [a] financial burden by litigating in a forum outside its home state." *Church & Dwight v. Mayer Lab'ys, Inc.*, Civ. A. No. 08-5743, 2010 WL 3907038, at *11 (D.N.J. Sept. 28, 2010). That said, assuming without deciding that FOCO "is the larger of the two corporations" (ECF No. 43-1 at 20), the argument that the relative financial impact of the litigation would be more burdensome for GV Art absent a transfer of the matter is well taken. FOCO, however, argues GV Art is "merely" attempting to "shift inconvenience from one party to another." (ECF No. 44 (citing *U.S. Min. Prods. Co. v. T-Mar Constr., Inc.*, Civ. A. No. 09-5895, 2010 WL 703190, at *3 (D.N.J. Feb. 23, 2010)).) While it could be that GV Art will experience a greater financial burden relative to FOCO

[10] Even if the Court were to agree with GV Art that the third factor is "at worst . . . neutral" because "it would be logical to infer that a good portion of the accused products – relating to professional and college sports teams in Ohio – would be sold to customers in Ohio" (ECF No. 43-1 at 19), on balance, the first three factors would nonetheless weigh against transfer given that FOCO's forum choice is given greater deference than GV Art's. *See N. Am. Commc'ns, Inc.*, 2018 WL 651795, at *6 n.10. Moreover, the Court does not agree it should draw that inference because it is neither supported by FOCO's Complaint, nor an affidavit supplied by GV Art. (*See* ECF No. 43-1 at 19 (citing nothing).) Further, this Court is required to draw all inferences in the light most favorable to FOCO. *See Worldcom, Inc.*, 343 F.3d at 653. While GV Art asks the Court to consider that GV Art develops its designs in Ohio, again, a declaratory judgment action seeking a declaration of non-infringement, like the one at hand, arises where the alleged infringer "created the allegedly infringing" material, *see Dermansky,* 2023 WL 4351340, at *3, here, New Jersey (ECF No. 1 ¶ 8). Although the "place where the harm occurred is . . . relevant for venue purposes," *N.Y. Mercantile Exch. v. Cent. Tours Int'l Inc.*, Civ. A. No. 96-8988, 1997 WL 370600, at *4 (S.D.N.Y. July 1, 1997), at best, a consideration of harm would be neutral because, at this stage, harm flows in both directions. FOCO faces harm if the accusations of infringement prove meritless, and GV Art faces harm if the accusations have merit. All in all, as is the case here, absent any reason to favor GV Art's preferred venue over FOCO's, the first three factors do not counsel transfer.

(ECF No. 43-1 at 21), GV Art does not go so far as to dispute its financial condition prevents it from litigating in New Jersey, *see U.S. Min. Prods. Co.*, 2010 WL 703190, at *3 (holding the convenience of the party factor is neutral where the party seeking transfer conceded "its financial condition permit[ted] it to litigate in New Jersey"). As such, the fourth factor is neutral—if it tipped in any direction, however, it would tip in GV Art's but only "slightly" so. *Church & Dwight*, 2010 WL 3907038, at *11.

As to the fifth and sixth private interest factors, GV Art argues these factors are both neutral (ECF No. 43-1 at 21–22.) For its part, FOCO argues the fifth factor "does not favor transfer" and agrees the sixth factor is neutral. (ECF No. 44 at 26–27.) Given that the sixth factor is not in dispute, the Court assumes without deciding that it is neutral for purposes of this Motion. *Margolin v. Nat'l Ass'n of Immigr. Judges*, 146 S. Ct. 1285, 1288 (2026) (per curiam) ("[P]oints not argued will not be considered . . . ."). As to the fifth factor, FOCO argues that forcing its employees to participate in this matter in Ohio "would impose an undue hardship on not only [its] departments and teams, but also on [its] business operations as a whole." (ECF No. 44 at 26.) But "[t]he convenience of witnesses factor is designed to take into account non-party witnesses who may be unavailable in the alternate fora." *Church & Dwight*, 2010 WL 3907038, at *11. That argument, in other words, was already "considered . . . in connection with the relative financial positions of the parties." *Id.* So, because both parties may "call third-party . . . witnesses" from their home fora, "the potential unavailability of these witnesses is in equipoise." *Id.* Considering all six private interest factors and the weight assigned to them, the Court finds these factors weigh against transfer: the first three factors weigh against transferring, and the last three factors are neutral.[11]

[11] As discussed, even if the fourth private interest factor tipped in favor of transfer, the slight weight that would be afforded to that factor would not change the Court's calculus.

### 2. Public Interest Factors

The parties both concede the first public interest factor—the enforceability of the judgment—is neutral. (*Compare* ECF No. 43-1 at 24, *with* ECF No. 44 at 27.) As such, the Court will treat the first public interest factor neutrally. *See Nat'l Ass'n of Immigr. Judges*, 146 S. Ct. at 1288.

The Court turns next to the second public interest factor, which looks at the "practical considerations that could make trial fast, expeditious[,] or inexpensive." *Jumara*, 55 F.3d at 879. The Court agrees with FOCO that this factor does not favor transfer. (ECF No. 44 at 27.) But the Court also agrees with GV Art—this factor does not favor retaining the matter. *Snack Joint LLC v. OCM Group USA, NJ, Inc.*, Civ. A. No. 21-818, 2021 WL 4077583, at *12 (D.N.J. Sept. 8, 2021) (Martinotti, J.) (explaining the second public interest factor is neutral where "[t]here is a likelihood that the parties, witnesses, and documents will need to be transferred from one forum to another regardless of where this case is litigated"). Simply put, the second public interest factor is also neutral.

The third public interest factor, however, favors transfer. It is no understatement to say that litigants have filed more civil cases in the U.S. District Court for the District of New Jersey during the twelve-month period ending on December 31, 2025, than ND Ohio. *See* United States Courts, Table C-4–U.S. District Courts–Civil Federal Judicial Caseload Statistics (Dec. 31, 2024) (2024 Data), https://perma.cc/V7T7-A3GD. [12] Given that phenomenon, the average time in months from filing to a disposition achieved during trial is comparatively shorter in ND Ohio. *See id.* That said, as FOCO correctly observes (ECF No. 44 at 27), the "'relative congestion of the respective courts'

[12] Because the newest version of Table C-5 does not provide information regarding time to trial for ND Ohio, the Court relies on the earlier version.

dockets is not a factor of great importance' on a motion to transfer." *Eastman v. First Data Corp.*, Civ. A. No. 10-4860, 2011 WL 1327707, at *5 (D.N.J. Apr. 5, 2011) (quoting *Kisko v. Penn. Cent. Transp. Co.*, 408 F. Supp. 984 (M.D. Pa. 1976)).

As to the fourth public interest factor—the local interest factor—GV Art argues this factor is neutral because "FOCO sells its [so-called] infringing goods nationwide" (ECF No. 43-1 at 26), while FOCO argues "New Jersey has a strong local interest in adjudicating a dispute affecting a New Jersey company's ability to operate its business free from unresolved threats of infringement litigation" (ECF No. 44 at 28). GV Art is correct. Neither state has a significantly greater local interest than the other state has in resolving the issue as there are competing interests on both sides. As discussed, New Jersey has an interest in ensuring that one of its businesses is not unduly dragged under the pall of business uncertainty based on allegations of infringement, and Ohio has an interest in preventing consumer confusion and protecting one of its businesses from supposed trade dress (and copyright) infringement. The fourth public interest factor, then, weighs in neither party's favor.

The fifth public interest factor—the public policy of the fora—has no bearing here. *See Care One, LLC v. Nat'l Lab. Rels. Bd.*, 680 F. Supp. 3d 540 (D.N.J. 2023). As to the sixth public interest factor—the familiarity with applicable state law—that factor is likewise neutral. In the November 19, 2025 ND Ohio Action, GV Art filed a motion to amend to include copyright claims under Ohio law. Mot. for Leave to File Am. Compl., *GV Art and Design, LLC v. Team Beans, L.L.C.*, Civ. A. No. 25-2525 (N.D. Ohio Mar. 18, 2026) (ECF No. 14 at 5). Presumably, then, if the November 6, 2025 Action is not transferred, GV Art will raise these claims as counterclaims. *See* Fed. R. Civ. P. 13(a). Although GV Art argues a federal judge sitting in ND Ohio would be more familiar with Ohio law than this Court, "both district courts are capable of entertaining" the

potential Ohio law counterclaims. *See Boards of Trs. of Sheet Metal Workers Loc. Union No. 12 Combined Funds v. TQA Fabrications, Inc.*, Civ. A. No. 05-259J, 2006 WL 8458480, at *6 (W.D. Pa. Mar. 30, 2006). Even considering the potential state law counterclaims, the heart of this matter is trade dress infringement, and both jurisdictions have equal familiarity with federal trade dress law. To the extent GV Art will raise counterclaims under Ohio law, again, "there is no evidence that [this Court] is unable to interpret and apply [Ohio] law." *White v. Shoot-A-Way, Inc.*, Civ. A. No. 19-0343, 2019 WL 1670721, at *2 (S.D. Tex. Apr. 17, 2019); *see also Sherwin-Williams Co. v. TMZ Enters., Inc.*, Civ. A. No. 15-8409, 2017 WL 4122436, at *4–5 (D.N.J. Sept. 18, 2017) (Martinotti, J.) (interpreting and applying Ohio law).

Here, all but one public interest factor is neutral. The one public interest factor that weighs in favor of transfer "is not a factor of great importance." *Eastman*, 2011 WL 1327707, at *5 (quoting *Kisko*, 408 F. Supp. 984). Taking into account that the first three private interest factors weigh against transferring, *see supra* Section III.C.1, and that the last three private interest factors are neutral, at this time, the Court finds transfer is unwarranted.

## IV. CONCLUSION

For the reasons set forth above, and for good cause appearing, GV Art's Motion is **DENIED**. An appropriate order follows.

Date: September 2, 2026

***/s/ Brian R. Martinotti***
**HON. BRIAN R. MARTINOTTI**
**UNITED STATES DISTRICT JUDGE**